IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) CR 12-295 (See CV 16-1235) |
| DEXTRICK LAWTON, | ) |
| | ) |
| Defendant/Petitioner. | ) |

MEMORANDUM OPINION

Petitioner Dextrick Lawton, on August 15, 2016, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 246) and memorandum of law in support thereof (Doc. No. 247). Upon consideration of this motion and memorandum, and upon further consideration of the Government's response thereto (Doc. No. 256), filed on December 29, 2016, and Petitioner's reply to the Government's response (Doc. No. 260), filed on February 22, 2017, the Court denies Petitioner's motion for the reasons set forth below.

**I.     Background**

On or about November 28, 2012, an indictment was returned by the Grand Jury charging Petitioner with conspiracy to possess with intent to distribute and/or distribute heroin, in violation of 21 U.S.C. § 846. After Petitioner initially pled not guilty, the parties began engaging in plea negotiations. On or around September 13, 2013, a formal written plea offer was presented by the Government to Petitioner's counsel at the time, Mark Moser. As part of the plea offer, the Government would agree not to file an information pursuant to 21 U.S.C. § 851 indicating that Petitioner had a prior controlled substance offense as a basis for increased punishment. The parties would stipulate that the type and quantity of controlled substance attributable to Petitioner for purposes of Section 2D1.1 of the United States Sentencing

1

Guidelines was 1 to 3 kilograms of heroin. The parties would further agree that the appropriate sentence in this case was a term of imprisonment of 15 years, to be followed by a term of supervised release of 5 years, no fine, and a special assessment of $100.00. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Petitioner would retain the right to withdraw his guilty plea if the Court did not accept the agreed-upon sentence.

On October 22, 2013, while the plea offer was still pending, the District Court for the Western District of Pennsylvania held a hearing at Petitioner's request to determine whether new counsel should be appointed based on Petitioner's claim that he was dissatisfied with the representation provided by Mr. Moser.[1] At this hearing, Judge Diamond preliminarily determined to allow Mr. Moser to withdraw as counsel and to appoint a new attorney to represent Petitioner. However, when Government counsel subsequently appeared at the hearing, he indicated that the Government would see a change in counsel as a delay tactic, would withdraw the pending plea offer, and would consider bringing additional charges against Petitioner. Specifically, Government counsel indicated that he would consider filing a notice pursuant to 21 U.S.C. § 851 that Petitioner had a prior felony drug offense that would increase Petitioner's mandatory minimum sentence from 10 years to 20 years, which was in excess of the proposed sentence in the plea offer. Further, Government counsel explained that he would consider filing a superseding indictment alleging that the heroin involved in the alleged conspiracy had caused the death of Brian Smith. Such an allegation, if proven, would have subjected Petitioner to a mandatory sentence of life imprisonment pursuant to 21 U.S.C. §

---

[1] This case was originally assigned to the Honorable Gustave Diamond, and Judge Diamond presided over all of the relevant district court proceedings.

841(b)(1)(A).[2] Because these new charges would have substantially increased Petitioner's criminal liability, he discussed with Mr. Moser whether to continue with new counsel and risk losing the plea offer and facing the new charges, or whether to keep Mr. Moser as counsel and accept the offer. After some discussion, Petitioner decided to keep Mr. Moser as counsel, accept the plea offer, and plead guilty to the charge in the indictment. Accordingly, the Court scheduled a change of plea hearing for November 12, 2013, which was subsequently continued to December 4, 2013.

At the December 4, 2013 hearing, Petitioner indicated that he wished to accept the plea offer and change his plea to one of guilty. Judge Diamond therefore conducted a colloquy pursuant to Federal Rule of Criminal Procedure 11. During the part of the colloquy when Government counsel summarized the evidence against Petitioner, Petitioner became upset and declined to agree to the accuracy of the summary. He asked for, and received, an opportunity to discuss with Mr. Moser whether he wanted to continue the proceeding and plead guilty.[3] Petitioner, after consulting with Mr. Moser, elected to continue and the Court entered a plea of guilty. A sentencing hearing was scheduled for April 9, 2014.

After the plea proceeding, Mr. Moser requested to withdraw and have new counsel appointed for Petitioner, and Petitioner renewed his request for the same. After a January 14, 2014 hearing, Judge Diamond granted the request and appointed Mark Sindler to represent Petitioner during the sentencing process. Attorney Sindler, on March 30, 2014, filed on

---

[2] The mandatory life sentence would be in conjunction with the evidence of a prior felony drug offense. However, even in the absence of such a prior conviction, the mandatory minimum sentence of imprisonment if the death of Brian Smith resulted from the use of heroin attributable to Petitioner would have been 20 years. See 21 U.S.C. § 841(b)(1)(A).

[3] The transcript of this hearing shows no such request on Petitioner's behalf. The Court is construing the facts here, nonetheless, in Petitioner's favor and therefore will assume Petitioner's account of the events is accurate.

3

Petitioner's behalf a Motion to Withdraw Guilty Plea (Doc. No. 159) and brief in support thereof (Doc. No. 160), arguing that the plea entered by Petitioner on December 4, 2013, had not been knowing and voluntary because of the ineffectiveness of Petitioner's prior counsel, Mr. Moser. On April 29, 2014, Judge Diamond denied this motion. After a short continuance, the sentencing hearing was held on May 21, 2014, at which time Judge Diamond again declined to allow Petitioner to withdraw his plea of guilty. The Court imposed the sentence to which the parties had agreed in the plea agreement, *i.e.*, 180 months' imprisonment to be followed by 5 years' supervised release. After obtaining new counsel, Maria Pulzetti, Petitioner subsequently appealed and challenged his conviction and sentence on a number of grounds, including that his guilty plea was not knowing and voluntary. On January 11, 2016, the Third Circuit Court of Appeals dismissed Petitioner's appeal based on the waiver of his right to appeal his conviction or sentence contained in the plea agreement.

On August 15, 2016, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255. On August 17, 2016, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain exceptional circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, and specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. Petitioner responded with a request that the Court rule on his

motion as filed, and the Court proceeded accordingly.  The Court will address the claims raised in Petitioner's motion below.

**II.     Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).  However, even a pro se plaintiff must be able to prove a "'set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As noted, Petitioner brings his pro se motion pursuant to Section 2255.  This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

In his motion and supporting brief, Petitioner raises claims alleging ineffective assistance of counsel, as well as several additional substantive claims.[4]  While his motion and brief are not entirely clear on the matter, it appears that his ineffective assistance claims are intertwined with the other alleged grounds for relief.  Nonetheless, for the reasons that follow, the Court finds no

---

[4] The Court notes that the Government does not contend that any of these substantive claims are procedurally defaulted or barred by the waiver of Petitioner's right to attack his conviction or sentence collaterally contained in the plea agreement.  Indeed, other than generally disputing Petitioner's claims, it has offered very little by way of response.  Regardless, as discussed herein, there is simply no basis to any of Petitioner's claims.

5

merit in Petitioner's claims and finds that the record conclusively shows that he is not entitled to relief under Section 2255 on any of the grounds that he alleges.[5]

### A. Claims of Ineffective Assistance of Counsel

A defendant seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result—that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "'It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

---

[5] Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

6

### 1. **Attorney Moser**

Petitioner alleges that several of his attorneys were ineffective in some way or another, but his contentions clearly focus of the conduct of his initial counsel, Mr. Moser. Specifically, he alleges that counsel provided him with objectively unreasonable advice, upon which he relied in deciding to plead guilty. In the context of a challenge to a guilty plea based on ineffective assistance of counsel, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Defense counsel's misrepresentations or erroneous predictions concerning applicable guideline ranges or probable sentences do not amount to prejudice. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases). See also United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003) (defendant unable to establish prejudice when sentenced to 130 months after alleged promise of 57-71 months because district court's "lengthy and extensive" Rule 11 colloquy informed defendant of maximum sentence, defendant confirmed there was no promise or assurance of any kind, and court explained that defendant would not be permitted to withdraw his plea if sentence was more severe than expected); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

As discussed above, Petitioner, at the October 22, 2013 hearing regarding his request for new counsel, faced the options of obtaining new counsel at the risk of losing the benefits of the plea offer pending at the time, or accepting that offer. The pending offer provided for an agreed-upon sentence of imprisonment of 15 years – 5 years more than the mandatory minimum

sentence applicable under the offer based on the Government's agreement not to file an information of prior conviction under Section 851. As the Court explained above, a Section 851 information would have increased the mandatory minimum sentence to 20 years – 5 years greater than the agreed-upon sentence. Accepting the pending offer would also eliminate the risk of a mandatory life sentence if the Government did file a superseding indictment alleging that the heroin sold by Petitioner's conspiracy caused the death of Brian Smith, pursuant to Section 841(b)(1)(A). Petitioner alleges that Mr. Moser, by advising that he faced significant risk of these additional penalties if he did not accept the plea offer, inaccurately advised him regarding the comparative sentencing exposure between the plea offer and potential conviction at trial. However, he can neither establish that Mr. Moser's advice in this regard fell below an objective standard of reasonableness under prevailing professional norms nor that he suffered any prejudice as a result of the advice.

 Petitioner attempts to establish the first prong of the Strickland inquiry by claiming that counsel's advice was unreasonable in regard to the risks associated both with the Government filing a Section 851 notice and with a superseding indictment alleging a death resulting from the heroin distribution. However, Mr. Moser's advice not only did not fall below an objective standard of reasonableness in regard to these issues, it was proper and sound advice. The Court notes that *either* a Section 851 enhancement *or* an enhancement for a resulting death under Section 841(B)(1)(A) would have placed Petitioner's mandatory minimum sentence significantly above the 15-year agreed-upon sentence, so arguably, Petitioner would have to show that Mr.

Moser was wrong in both regards to warrant Section 2255 relief.[6] Regardless, Mr. Moser's advice was reasonable on both accounts.

In regard to the Section 851 information, Petitioner does nothing more than claim that Government counsel acted contrary to the United States Department of Justice's own internal guidance on the filing of such informations. He does not allege that he had no convictions that would apply under Section 851, and, indeed, the Presentence Investigation Report clearly shows that he did. He further does not explain what Mr. Moser should have, or even could have done in the face of this alleged violation of the Government's own internal policy. As the Appellate Court pointed out, Mr. Moser did object to the Government altering or reneging the plea offer, but Judge Diamond informed the parties that the Government was within its rights to do so prior to the acceptance of the offer. Indeed, Petitioner offers no real authority that would support the contention that his attorney could have prevented the filing of a Section 851 notice. As such, he cannot establish that it would be unreasonable for Mr. Moser to advise of the increased sentencing liability such a notice would create.

In regard to the enhancement for the alleged resulting death, Petitioner argues that counsel should have been aware of the then-pending case of Burrage v. United States, 134 S. Ct. 881 (2014), at the time he rendered his advice, and that he should have realized that the rationale ultimately adopted in Burrage substantially changed the likelihood that he could be found to have been criminally liable for the death of Mr. Smith. There are at least two problems with this argument. The first, which Petitioner fully acknowledges, is that the Supreme Court's decision in Burrage had not yet been issued at the time of his plea. He contends that his attorney should have been aware of the case and its potential impact in this case. However, at the time that he

---

[6] The Court notes that at no point does Petitioner allege that Mr. Moser inaccurately perceived or conveyed the likelihood that he would in fact be convicted of the charge contained in the indictment if he proceeded to trial.

9

gave the advice to Petitioner that caused him to accept the Government's offer and plead guilty, Burrage had not even been argued before the Supreme Court. Indeed, the Court in Burrage, in holding that the enhancement in Section 841(b) for death or serious bodily injury could not be applied unless use of the drug distributed by the defendant was an independently sufficient cause of the victim's death or serious bodily injury or the use was a but-for cause of the death or injury, see 134 S. Ct. at 892, reversed the Eight Circuit's decision that the drug use only had to be a contributing cause of death. The Eighth Circuit's position was generally consistent with that of the Third Circuit at the time. See United States v. Robinson, 167 F.3d 824, 831 (3d Cir. 1999). Accordingly, assuming that Burrage would change the generally existing standard before the decision had been issued or the case even argued would have required not competence, but prescience, on the part of counsel. Considering that in general, there is no duty on the part of defense counsel to anticipate changes in the law, see Sistrunk, 96 F.3d at 670-71; Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989),[7] it is not reasonable to have expected Mr. Moser to foresee what was to happen in Burrage.[8]

Moreover, Petitioner significantly over-estimates the potential benefit in his case from the decision in Burrage. The Supreme Court did not hold, in that case, that use of a distributed drug was required to be the sole cause of death. Indeed, the Court held that even when use of the substance is not an independently sufficient cause of death, criminal liability for the enhancements under Section 841(b) apply if the use was a but-for cause of death. In that case, the Court addressed a situation in which multiple drugs were present in the victim's system at the time of death and in which the medical experts did not opine that the drug distributed by the

---

[7] Further, the reasonableness of counsel's challenged conduct must be "viewed as of the time of counsel's conduct." Sistrunk, 96 F.3d at 670.

[8] As explained, waiting indefinitely for the decision in Burrage was likely not an option if Petitioner had any interest in accepting the then-pending plea offer.

10

defendant – heroin – was a but-for cause of the victim's death. Instead, they found heroin to have been a contributing factor, which the district court held sufficient to establish the enhancement applicable if death or serious bodily injury results from the use of the illegal substance. The Supreme Court rejected the "contributing cause" standard, but in no way suggested that heroin had to have been the sole cause of death. It held merely that a showing of but-for causation was required for the sentencing enhancement to apply.

Here, Petitioner contends that the autopsy report of the victim, Brian Smith, suggests that, under Burrage, it was objectively unreasonable for Mr. Moser to advise him that he faced a significant likelihood of a sentencing enhancement because heroin toxicity was not the only listed cause of death. Indeed, asphyxia as a result of the victim choking on food was also listed as a contributory cause of death. (Doc. No. 247, Ex. 7). However, the report clearly states that the victim "died as a result of heroin toxicity." (Id.). Asphyxia is listed merely as a contributory cause. Therefore, unlike the case in Burrage, here there appears to have been medical opinion evidence stating not merely that heroin was a contributing factor to the victim's death, but rather that it caused his death. Based on this key distinction, Mr. Moser cannot reasonably be said to have provided ineffective assistance by not suggesting that Burrage – again, a decision not yet issued – would have substantially changed Petitioner's sentencing exposure. Indeed, Petitioner does not allege, and the record does not show, that Mr. Moser at any point advised Petitioner that he would have no defense against a claim that the heroin involved resulted in Mr. Smith's death. He merely advised Petitioner that such exposure was a very real risk and that it could result in a much longer sentence. Nothing in Burrage, even if it had been decided at that point, renders any of this advice inaccurate.

Petitioner also contends, somewhat vaguely, that Attorney Moser should have stepped in and stopped the change of plea proceeding on December 4, 2013. However, the record shows that Mr. Moser did confirm with Petitioner that he wished to continue with the proceeding. The choice of whether or not to accept a plea offer belongs to the criminal defendant. See Florida v. Nixon, 543 U.S. 175, 187 (2004). To imply that Mr. Moser was ineffective for failing to make the independent decision to stop the proceeding contrary to what his client had just told him, particularly in light of the very significant additional criminal exposure Petitioner would likely face if he did not accept the plea offer, is simply contrary to law.

Moreover, even if the Court were to find that Mr. Moser's advice to Petitioner regarding the potential liability he faced as a result of pleading guilty rather than proceeding to trial was objectively unreasonable, the Court would not find that Petitioner was prejudiced as a result. After obtaining new counsel, Petitioner did attempt to withdraw the guilty plea he entered on December 4, relying on many of the same arguments he raises here. Judge Diamond rejected these arguments, finding that Petitioner had not demonstrated "a fair and just reason for requesting the withdrawal," pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). Therefore, even assuming that Petitioner was right about the advice he received from Attorney Moser, he already brought those concerns before the Court prior to sentencing. Accordingly, the Court would not find that there is a reasonable probability that, but for counsel's, the result of the proceeding would have been different.

   2.   **Attorney Sindler**

While Petitioner's arguments regarding ineffectiveness revolve primarily around Mr. Moser, he is not the only attorney who Petitioner claims was constitutionally ineffective. He also argues that his counsel at sentencing, Mr. Sindler, was ineffective in failing to ensure that

his sentence was reduced pursuant to Amendment 782 to the United States Sentencing Guidelines. As with Petitioner's arguments regarding Mr. Moser, there are multiple problems with Petitioner's contentions.

First, Amendment 782, which lowered the quantity totals needed to find the base offense level for drug offenses under USSG §§ 2D1.1 and 2D1.11, did not take effect until November 1, 2014, well after Petitioner's sentencing, and close to a year after he accepted the Government's plea offer and pled guilty. More importantly, though, Petitioner's plea agreement contained an agreed-upon sentence. The agreed-upon sentence, as the Court has discussed extensively above, was part of a deal that eliminated the almost certain risk that Petitioner's mandatory minimum could have been increased based on his prior drug-trafficking conviction and the very real risk that he would face life imprisonment if the Government superseded the indictment to charge that the heroin at issue had resulted in the death of Brian Smith. Accordingly, much more went into the negotiation of the recommended sentence than the applicable drug quantity. This is reinforced by the fact that the plea agreement contained only an agreement as to drug quantity, and that it did not provide an agreed-upon guideline range or information sufficient to calculate the guideline range. Cf. United States v. Weatherspoon, 696 F.3d 416 (3d Cir. 2012).[9]

---

[9] In this case, of course, the issue is whether counsel should have asked for a reduction based on the forthcoming change in the guideline calculations for drug quantities pursuant to Amendment 782 at the time of sentencing, and not the retroactive application of that amendment. Nonetheless, case law regarding retroactive application of amendments to the Sentencing Guidelines, pursuant to 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10, is instructive here. In Weatherspoon, the Third Circuit, relying on Justice Sotomayor's concurrence in Freeman v. United States, 131 S. Ct. 2685 (2011), discussed when an agreed-upon sentence pursuant to Rule 11(c)(1)(C) is "based on" the guidelines for purposes of retroactive application of Amendment 782. The Circuit Court, in Weatherspoon, emphasized that the plea agreement in that case, while it contained recommendations as to the applicable drug quantities, did not contain guideline calculations or information sufficient to calculate the guideline range. See 696 F.3d at 422-24. While not binding as to the issue of whether a reduction should have been sought at the time of sentencing, it does demonstrate that the general state of the law was that an agreed-upon Rule 11(c)(1)(C) sentence would not ordinarily be considered to be based on the Sentencing

One thing that has been made apparent in this case is that Petitioner was required to make certain decisions in the Fall of 2013. He chose to accept an offer to a 15-year sentence in order to avoid the risk of a significantly greater sentence if convicted at trial. As discussed herein, although Petitioner questions his prior counsel's advice as to these matters, the record shows that counsel gave objectively reasonable advice, and that Petitioner likely benefitted greatly from the plea deal. Asserting that counsel was ineffective for not trying to undo this deal at the time of sentencing by seeking a sentence other than the one to which the parties had agreed based on a prospective change in the Guidelines' drug quantity tables is simply not supported by the record, especially in light of the fact that nothing in the plea agreement suggests that the sentence was premised on any specific guideline range. As such, the Court cannot find Mr. Sindler to have been ineffective in regard to this matter.

### B. Prosecutorial Misconduct

Petitioner alleges not only poor representation from his own attorneys, but also misconduct of the Government's attorneys. Under Section 2255, relief for prosecutorial misconduct is appropriate when the prosecutor's misconduct "so infected the [proceeding] with unfairness as to make the resulting conviction a denial of due process." United States v. Mangiardi, 173 F. Supp. 2d 292, 303 (M.D. Pa. 2001) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). See also United States v. Ratigan, 351 F.3d 957, 964 (9th Cir. 2003). "For due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair [proceeding]." Mangiardi, 173 F. Supp. 2d at 303 (quoting Wertz v. Vaughn, 228 F.3d 178, 197-98 (3d Cir. 2000)). Unfortunately for Petitioner, the record does not provide any support for a claim of prosecutorial misconduct.

---

Guidelines under the facts of this case. Weatherspoon would be binding to the extent that Petitioner were to file a Section 3582(c)(2) motion, and would establish that he would be ineligible for a modification based on Amendment 782.

Petitioner argues that the Government improperly introduced information at the time of sentencing, pursuant to Alleyne v. United States, 133 S. Ct. 2151 (2013), causing his sentence to be unlawfully enhanced based on facts not proved to a jury. However, Petitioner's argument relates, not to any enhancement to the statutory minimum sentence, but to factors that he claims raised his advisory guideline sentencing range. It is the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), that applies to sentencing factors under the United States Sentencing Guidelines. In Booker, the Supreme Court, relying on Apprendi v. New Jersey, 530 U.S. 466 (2000,) and Blakely v. Washington, 542 U.S. 296 (2004), held that, if rendered merely advisory, the Guidelines would no longer implicate the Sixth Amendment, and, accordingly, held that the Guidelines were no longer mandatory. The Court, therefore, expressly refused to graft the Sixth Amendment's requirements regarding a jury finding beyond a reasonable doubt any fact that could increase the defendant's statutory maximum sentence onto the Sentencing Guidelines. Pursuant to Booker, then, since the Guidelines are now merely advisory, sentencing factors under the Guidelines need not be determined by a jury beyond a reasonable doubt. Rather, the Court may determine the applicability of sentencing factors in determining the advisory guideline sentencing range by a preponderance of the evidence. See United States v. Fisher, 502 F.3d 293, 305-06 (3d Cir. 2007).

Alleyne essentially extended the rule of Apprendi regarding facts that could increase a statutory maximum sentence to those that could increase a statutory minimum sentence. In no way did Alleyne overrule or alter Booker, nor did it hold that even advisory guideline findings that may increase a defendant's minimum recommended guideline sentence had to be proved to a jury. See United States v. Garba, No. 10-4445 (MLC), 2014 WL 326099, at \*\* 3-4 (D. N.J. Jan. 29, 2014). See also United States v. Triminio, 538 Fed. Appx. 232 (3d Cir. 2013). As such,

15

there was nothing improper with the Government arguing that certain guideline factors apply at sentencing. Regardless, Petitioner would not have been prejudiced by the Government raising these sentencing factors because the parties had already stipulated to the appropriate sentence in any event.

Petitioner further argues that the Government withheld evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), specifically, Brian Smith's autopsy report. To establish a <u>Brady</u> violation, Petitioner must establish (1) that evidence was suppressed; (2) that the evidence was favorable to his defense; and (3) that the evidence was material to guilt or punishment. See <u>Strohl v. Grace</u>, 354 Fed. Appx. 650, 653 (3d Cir. 2009). Petitioner cannot satisfy these criteria. Most significantly, by his own admission, the autopsy report was made available to his counsel. Moreover, as discussed above, the autopsy is not favorable to, but likely quite damaging to the defense.

Finally, Petitioner alleges that the Government's conduct during plea negotiations constitutes a ground for relief, specifically, threatening to withdraw the plea offer and file an information pursuant to Section 851 and seek a superseding indictment. However, as discussed, the Government did not act inappropriately during plea negotiations, and certainly not to the point of denying Petitioner due process. Petitioner himself decided to accept the plea offer, which contained provisions beneficial to him. Moreover, the change of plea hearing did not occur until six weeks after Petitioner indicated that he would accept the offer, an offer that, at that point, had been outstanding for approximately a month. Further, Plaintiff, by his own admission was already aware of the possibility of a superseding indictment alleging the death of Brain Smith prior to the October 2013 hearing at which he decided to accept the plea offer. (Doc. No. 247 at 3).

**III.    Conclusion**

For the above-stated reasons, Petitioner's motion is denied in its entirety.  Further, this Court will not issue a certificate of appealability in this case.  A certificate of appealability may issue under Section 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability should not issue in this action.


s/ Alan N. Bloch
United States District Judge


Date:    March 26, 2018

ecf:     Counsel of record

cc:      Dextrick Lawton, Fed. Reg. No. 33923-068
         FCI Loretto
         P.O. Box 1000
         Loretto, PA 15940