IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 12-295 |
| ) | |
| DEXTRICK LAWTON, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 21st day of April, 2020, upon consideration of Defendant Dextrick Lawton's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Doc. No. 314), filed in the above-captioned matter on March 5, 2019, and in further consideration of the Government's response thereto (Doc. No. 319), filed on April 24, 2019, and Defendant's reply (Doc. No. 322), filed on May 17, 2019, as well as Plaintiff's supplemental briefs (Doc. Nos. 323 and 324), filed on January 6, 2020, and April 6, 2020, respectively, and the Government's response (Doc. No. 325), filed on April 20, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

**I.      Background**

To fully understand the Court's ruling, it is necessary to look closely at the procedural history of this case. Defendant was indicted on November 28, 2012 for conspiracy to possess with intent to distribute and/or distribute heroin, in violation of 21 U.S.C. § 846. After Defendant initially pled not guilty, the parties began engaging in plea negotiations. On or around September 13, 2013, a formal written plea offer was presented by the Government to Defendant's counsel at the time, Mark Moser. As part of the plea offer, the Government would

1

agree not to file an information pursuant to 21 U.S.C. § 851 indicating that Defendant had a prior controlled substance offense as a basis for increased punishment. The parties would stipulate that the type and quantity of controlled substance attributable to Defendant for purposes of Section 2D1.1 of the United States Sentencing Guidelines was 1 to 3 kilograms of heroin. The parties would further agree that the appropriate sentence in this case was a term of imprisonment of 15 years, to be followed by a term of supervised release of 5 years, no fine, and a special assessment of $100.00. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Defendant would retain the right to withdraw his guilty plea if the Court did not accept the agreed-upon sentence.

On October 22, 2013, while the plea offer was still pending, the District Court for the Western District of Pennsylvania held a hearing at Defendant's request to determine whether new counsel should be appointed based on Defendant's claim that he was dissatisfied with the representation provided by Mr. Moser.[1] At this hearing, Judge Diamond preliminarily determined to allow Mr. Moser to withdraw as counsel and to appoint a new attorney to represent Defendant. However, when Government counsel subsequently appeared at the hearing, he indicated that the Government would see a change in counsel as a delay tactic, would withdraw the pending plea offer, and would consider bringing additional charges against Defendant. Specifically, Government counsel indicated that he would consider filing a notice pursuant to 21 U.S.C. § 851 that Defendant had a prior felony drug offense that would increase Defendant's mandatory minimum sentence from 10 years to 20 years, which was in excess of the proposed sentence in the plea offer. Further, Government counsel explained that he would

---

[1] This case was originally assigned to the Honorable Gustave Diamond, and Judge Diamond presided over all of the relevant district court proceedings.

consider filing a superseding indictment alleging that the heroin involved in the conspiracy had caused the death of Brian Smith. Such an allegation, if proven, would have subjected Defendant to a mandatory sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).[2] Because these new charges would have substantially increased Defendant's criminal liability, he discussed with Mr. Moser whether to continue with new counsel and risk losing the plea offer and facing the new charges, or whether to keep Mr. Moser as counsel and accept the offer. After some discussion, Defendant decided to keep Mr. Moser as counsel, accept the plea offer, and plead guilty to the charge in the indictment. Accordingly, the Court scheduled a change of plea hearing for November 12, 2013, which was subsequently continued to December 4, 2013.

At the December 4, 2013 hearing, Defendant indicated that he wished to accept the plea offer and change his plea to one of guilty. Judge Diamond therefore conducted a colloquy pursuant to Federal Rule of Criminal Procedure 11. During the part of the colloquy when Government counsel summarized the evidence against Defendant, Defendant became upset and declined to agree to the accuracy of the summary. However, after consulting with counsel, Defendant elected to continue, and the Court entered a plea of guilty. A sentencing hearing was scheduled for April 9, 2014.

After the plea proceeding, Mr. Moser asked to withdraw and have new counsel appointed for Defendant, and Defendant renewed his request for the same. After a January 14, 2014 hearing, Judge Diamond granted the request and appointed Mark Sindler to represent Defendant during the sentencing process. Attorney Sindler, on March 30, 2014, filed on

---

[2] The mandatory life sentence would be in conjunction with the evidence of a prior felony drug offense. However, even in the absence of such a prior conviction, the mandatory minimum sentence of imprisonment if the death of Brian Smith resulted from the use of heroin attributable to Defendant would have been 20 years. See 21 U.S.C. § 841(b)(1)(A) (2012).

Defendant's behalf a Motion to Withdraw Guilty Plea (Doc. No. 159) and brief in support thereof (Doc. No. 160), arguing that the plea entered by Defendant on December 4, 2013, had not been knowing and voluntary because of the ineffectiveness of Defendant's prior counsel, Mr. Moser.  On April 29, 2014, Judge Diamond denied this motion.  After a short continuance, the sentencing hearing was held on May 21, 2014, at which time Judge Diamond again declined to allow Defendant to withdraw his plea of guilty.  The Court adopted its tentative findings that, based on Defendant's criminal history category of III and an offense level of 32, the recommended sentencing range, pursuant to the United States Sentencing Guidelines, was 151 to 188 months' imprisonment.  The Court proceeded to impose the sentence to which the parties had agreed in the plea agreement, *i.e.*, 180 months' imprisonment to be followed by 5 years' supervised release,  Although this sentence was within the recommended guideline sentencing range, Judge Diamond noted that the guidelines were not controlling.

After obtaining new counsel, Maria Pulzetti, Defendant subsequently appealed and challenged his conviction and sentence on a number of grounds, including that his guilty plea was not knowing and voluntary.  On January 11, 2016, the Third Circuit Court of Appeals dismissed Defendant's appeal based on the waiver of his right to appeal his conviction or sentence contained in the plea agreement.  On August 15, 2016, Defendant, acting pro se, filed a motion pursuant to 28 U.S.C. § 2255, primarily raising allegations that his various attorneys were ineffective in connection with his plea agreement and sentence.  After this Court denied Defendant's Section 2255 motion, he appealed, but the Third Circuit affirmed.  Defendant, now, through counsel, seeks a reduction in his sentence pursuant to 18 U.S.C § 3582(c)(2).

## II.   Discussion

Section 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

Pursuant to this statute, the Court must engage in a two-step inquiry. First, it must determine whether a reduction in sentence is consistent with USSG § 1B1.10. Second, if it is consistent, the Court must decide whether the authorized reduction is warranted, in whole or in part, by the factors set forth in 18 U.S.C. § 3553(a). See Dillon v. United States, 560 U.S. 817, 826 (2010).

Defendant asserts that he is eligible for a Section 3582(c)(2) sentencing reduction pursuant to Amendment 782 of the Sentencing Guidelines, effective November 1, 2014, which retroactively lowered the quantity totals needed to find the base offense level for most drug offenses under USSG §§ 2D1.1 and 2D1.11. He argues, correctly, that application of Amendment 782, and the amended drug tables in the Sentencing Guidelines, would reduce his recommended guideline sentencing range from 151 to 188 months' imprisonment down to 121 to 151 months. He further argues that, based on this change in the recommended guideline range, a sentence comparable to his original sentence under the prior guidelines would be no greater than 144 months.

As discussed above, this case involved an agreed-upon sentence pursuant to Rule 11(c)(1)(C). As Defendant explains in his motion, under prior Third Circuit case law considering when an agreed-upon sentence pursuant to Rule 11(c)(1)(C) is "based on" the

guidelines for purposes of retroactive application of Amendment 782, he would not have been eligible for relief under the circumstances here. See United States v. Weatherspoon, 696 F.3d 416 (3d Cir. 2012) (relying on Justice Sotomayor's concurrence in Freeman v. United States, 564 U.S. 522 (2011)). However, the United States Supreme Court subsequently held, in Hughes v. United States, 138 S. Ct. 1765 (2018), that "in the usual case the court's acceptance of a Type-C agreement and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guideline range." Id. at 1776. In so holding, the Supreme Court emphasized that agreed-upon sentences under Rule 11(c)(1)(C) are no exception to the general principle that "a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence," and that, even in accepting an agreed-upon sentence, the district court must evaluate the recommendation in light of the recommended guideline range. Id.

        The parties agree that, pursuant to Hughes, Defendant's sentence, although agreed-upon by the parties, is deemed to be "based on" the Sentencing Guidelines and that Defendant, therefore, is eligible for a sentence reduction under Section 3582(c)(2). They disagree, however, as to whether such a reduction would actually be appropriate. The Court agrees with the Government that, based on the facts and circumstances of this case, no reduction to Defendant's sentence is warranted.

        Based on Hughes, the Court agrees with the parties that Defendant is eligible for relief under Section 3582(c)(2) pursuant to Amendment 782. However, as the Supreme Court stated, what was at stake in Hughes was "a defendant's eligibility for relief, not the extent of that relief." 138 S. Ct. at 1777. The majority made it clear that "[t]he district court can consider the benefits the defendant gained by entering a Type-C agreement when it decides whether a reduction is appropriate (or when it determines the extent of any reduction), 'for the statute

permits but does not require the court to reduce a sentence.'" Id. (quoting Freeman, 564 U.S. at 532). Here, the benefits Defendant received by entering into the agreed-upon sentence in this case demonstrate that no reduction is appropriate.

While the sentence in this case was "based on" the guidelines in a technical sense, and although Judge Diamond did note in the Statement of Reasons that the sentence that he had imposed was within the recommended guideline sentencing range, the actual calculation of Defendant's sentence was clearly based primarily on other factors. As discussed above, at a hearing where the Court was considering Defendant's request for a change of counsel, the Government indicated that if Defendant pursued his request for new counsel, it would withdraw the plea proposal, which included the 15-year stipulated imprisonment sentence, and would instead file an information pursuant to Section 851 indicating that Defendant had a prior predicate drug conviction. It also indicated that it would consider filing a superseding indictment charging that the drug-trafficking conspiracy for which Defendant was charged resulted in the death of Brian Smith. ***Either*** a Section 851 enhancement ***or*** an enhancement for a resulting death under Section 841(b)(1)(A) would have subjected Defendant to a mandatory minimum sentence of 20 years, significantly above the 15-year agreed-upon sentence,  If both applied, Defendant would have faced a mandatory sentence of life imprisonment. The agreed-upon sentence, therefore, was part of a deal that eliminated the almost certain risk that Defendant's mandatory minimum could have been increased based on his prior drug-trafficking conviction and the very real risk that he would face life imprisonment if the Government superseded the indictment to charge that the heroin at issue had resulted in the death of Mr. Smith.

The record shows that it was these numbers – a 10-year mandatory minimum without enhancements and a 20-year or life mandatory sentence with enhancements, that drove

the stipulation to a sentence of 15 years that split the difference between the two. While the 180-month sentence was, in fact, within the recommended guideline range applicable at the time, that range was never discussed in connection with the formulation of the stipulated sentence. At no point, for instance, was it determined that a sentence at 75-80 per cent of the guideline range was appropriate. In fact, the 15-year sentence was recommended before a guideline range had been calculated. Other than to note that the guideline range was not binding on the Court, Judge Diamond did not discuss the Sentencing Guidelines at Defendant's sentencing hearing. Indeed, when it appeared plea negotiations may be delayed, the Government did not threaten to attempt to attribute more heroin to Defendant, but rather, as discussed, to file an 851 information and/or superseding indictment. This shows that it was not the quantity, but the balance between the sentence faced by Defendant without enhancement and the one he faced were the Government to file the information or superseding indictment, that primarily influenced the agreed-upon sentence. Defendant benefited immensely from such an agreement; it eliminated the risk of a far greater sentence for Defendant and essentially represented a compromise between two or more statutory sentencing possibilities.

        The Section 3553(a) factors raised by Defendant do not compel a different result. He was relatively young when convicted, but no younger than many criminal defendants, and his criminal history was fairly substantial for a person his age. Likewise, his employment history, family situation, and progress toward rehabilitation while incarcerated are in line with that of many criminal defendants convicted of similar crimes. Although, based on the amended guideline range, Defendant's sentence would now constitute a slight upward variance, the Section 3553(a) factors still support the sentence imposed by Judge Diamond. As the parties acknowledge, the criminal conduct in this case, which involved an extensive heroin conspiracy, was quite serious. Moreover, despite his

age, Defendant was found to have played a leadership role within the drug-trafficking conspiracy. Further, Defendant's recommended sentencing range does not account for the possibility that his criminal activity led to the death of Mr. Smith.  While these allegations were never charged and proved, they were an important part of the sentence negotiation between the parties.  Indeed, the fact that Mr. Smith's death would not be considered in determining his sentencing was precisely what Defendant bargained for, again showing just how valuable the plea agreement was to him  Judge Diamond even noted, at sentencing, that the superseding indictment was never filed because of the plea agreement into which Defendant had entered.  (Doc. No. 201 at 8).

The Court finds, therefore, that the 3553(a) factors provide for a sentence consistent with the one to which the parties agreed.  "If the district court concludes that it would have imposed the same sentence even if the defendant had been subject to the lower range, then the court retains discretion to deny relief."  Hughes, 138 S. Ct. at 1778.

### III.  Conclusion

Accordingly, the Court finds that although Defendant is eligible for a sentencing reduction under Section 3582(c)(2), no such reduction is warranted.  His motion is therefore denied.

s/Alan N. Bloch
United States District Judge

ecf:  Counsel of record